# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jane Doe #4 and Jane Doe #5      :
                                       :
           v.                   :   No. 1377 C.D. 2024
                                       :   Argued: February 3, 2026

Palisades School District and    :
Christian Willman              :
                                       :
Appeal of: Palisades School District   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: July 10, 2026

Palisades School District (District)[1] appeals from the September 25, 2024 Order of the Court of Common Pleas of Bucks County (common pleas), which denied the District's Motion for Partial Summary Judgment (Motion).[2] Through the Motion, the District sought to dismiss the claims of Jane Doe #4, asserting that the claims were barred by governmental immunity under the part of the Judicial Code commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act).[3] On appeal, the District contends that this Court has jurisdiction to hear this

---

[1] On July 7, 2025, Christian Willman informed the Court that he took no position on and would not be participating in this appeal.

[2] The Motion did not involve any of Jane Doe #5's claims and, as such, she is not participating in this appeal.

[3] 42 Pa.C.S. §§ 8541-8542.

interlocutory appeal under the collateral order doctrine and that common pleas erred in denying it summary judgment because the District is entitled to governmental immunity under the Tort Claims Act as to Jane Doe #4's claims. Upon careful review, we conclude that this Court has jurisdiction under the collateral order doctrine and that common pleas did not err or abuse its discretion in denying summary judgment based on the District's assertion that, as a matter of law, the sexual abuse exception to the Tort Claims Act did not apply to Jane Doe #4's claims under the circumstances of this case. Therefore, we affirm.

## I. BACKGROUND[4]

The relevant factual and procedural background of this case is not disputed. Christian Willman (Willman) was employed by the District as a teacher and soccer coach. He was previously employed by Parkland High School in Lehigh County in similar positions. During his tenure at the District, Jane Doe #4 and Jane Doe #5 were students, and Willman was Jane Doe #4's teacher. At some point during Willman's tenure at the District, he initiated communications with Jane Doe #4 through text messages, which eventually turned sexual in nature. Willman had physical contact with Jane Doe #4 in the form of hugging and brushing up against her, which occurred in the school setting and during soccer practices and scrimmages.[5] Willman was subsequently charged with offenses related to his

---

[4] Unless otherwise stated, the recitation of the factual background is based on the factual summary set forth in common pleas' opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), which is supported by the record. (Common Pleas' Rule 1925(a) Opinion at 3-4); *see also Schmidt v. Dep't of Transp.*, 326 A.3d 147, 149 n.1 (Pa. Cmwlth. 2024) (adopting recitation of facts from trial court opinion unless otherwise stated).

[5] In the Complaint, Jane Doe #4 alleges that Willman, who was her soccer coach and a teacher, would brush up against her at soccer practice and scrimmages and that Willman would frequently hug Jane Doe #4 and ask her to hug him. (Complaint (Compl.) ¶ 41.) In addition,

2

contact with Jane Doe #4, and with sexually abusing Jane Doe #5 during his tenure at the District and four other female students during his tenure at Parkland High School. Willman pled guilty to these offenses, was convicted as a sex offender, and was sentenced to 6 to 12 years of incarceration in a state correctional facility.

After Willman's conviction, Jane Doe #4 and Jane Doe #5 filed a Civil Complaint against the District and Willman. Three of the victims from Parkland High School originally joined the Complaint; however, after preliminary objections, these parties' claims were severed. (Reproduced Record (R.R.) at 6a-7a.) In relevant part, only Jane Doe #4's claims sounding in negligence survived the preliminary objection phase.

The District later filed the Motion, wherein it sought dismissal of Jane Doe #4's claims because, according to the District, it is immune from liability under the Tort Claims Act, and the so-called sexual abuse exception found in Section 8542(b)(9) of the Tort Claims Act, 42 Pa.C.S. § 8542(b)(9), does not apply.[6] (R.R. at 71a-74a.) Through the Motion, the District asserted that the sexual abuse exception to immunity only applies to offenses enumerated under Section 5551(7) of the Judicial Code, 42 Pa.C.S. § 5551(7), and that the crimes of conspiracy or

---

during Jane Doe #4's deposition, she stated that Willman would also brush against her shoulders when she visited his classroom. (Reproduced Record (R.R.) at 341a.)

[6] Section 8542(b)(9) of the Tort Claims Act provides:

> **(b) Acts which may impose liability**.--The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
> . . . .
> (9) *Sexual abuse*.--Conduct which constitutes an offense enumerated under [S]ection 5551(7) [of the Judicial Code, 42 Pa.C.S. § 5551(7)] (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence.

42 Pa.C.S. § 8542(b)(9) (emphasis in original).

3

solicitation must be the proximate cause of a Section 5551(7) offense. (*Id.* at 72a-73a.) If such crimes are not the proximate cause, as the District contended was the situation here because Jane Doe #4 admitted that she "decided that she was not going to engage" in sexual activity with Willman, then the sexual abuse exception is inapplicable. (*Id.* at 73a.) The District also asserted in the Motion that sexual contact never occurred between Willman and Jane Doe #4, and that Jane Doe #4 stated that she was not going to engage in sexual activity with Willman. (*Id.*)

On September 18, 2024, common pleas held oral argument on the Motion and took the matter under advisement. On September 25, 2024, common pleas issued the Order wherein it denied partial summary judgment because it determined that a genuine issue of material fact existed as to whether Willman's conduct constituted "indecent contact" as defined under Section 3101 of the Crimes Code, 18 Pa.C.S. § 3101.[7] (District's Brief (Br.), Appendix (App.) A at A.1.) The District timely appealed to this Court, common pleas directed the District to file a Concise Statement of Errors Complained of on Appeal under Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), and the District complied.

On November 20, 2024, common pleas filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a). (Common Pleas' 1925(a) Opinion (1925(a) Opinion or Op.).) Therein, common pleas explained its interpretation of the term "indecent contact," and why there were genuine issues of material fact as to whether Willman's conduct toward Jane Doe #4 constituted "indecent contact" that had to go to a jury and precluded summary relief

---

[7] Section 3101 of the Crimes Code defines "[i]ndecent contact" as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

in the District's favor as to Jane Doe #4. Common pleas thus concluded that it properly denied partial summary judgment as to Jane Doe #4's claims.

## II. DISCUSSION[8]

The District raises multiple issues on appeal, which we have summarized for ease of discussion: (1) whether common pleas' Order satisfies the collateral order doctrine granting this Court jurisdiction over this appeal;[9] and (2) whether common pleas committed an error of law or an abuse of discretion by denying partial summary judgment. We address each issue in turn. As the District raises a pure question of law involving statutory interpretation, our scope of review is plenary and our standard of review is de novo. *Commonwealth v. Gamby*, 283 A.3d 298, 304 (Pa. 2022).

### A. The Collateral Order Doctrine

Because it affects our jurisdiction, we begin by addressing whether the Order satisfies the requirements of the collateral order doctrine. Pursuant to Pennsylvania Rule of Appellate Procedure 313(a), "[a]n appeal may be taken as of right from a

---

[8] "With regard to jurisdictional questions and other questions of law, our standard of review is de novo, and our scope of review is plenary." *P.G.S. v. Hendricks*, 341 A.3d 844, 851 n.7 (Pa. Cmwlth. 2025) (italics removed) (citation omitted). Likewise, "[w]hether a particular immunity applies is a question of law as to which our standard of review is de novo and our scope of review is plenary." *Id.* at 853 n.8 (italics removed) (citation omitted). Because this case involves a denial of summary judgment, we also note that "[o]ur standard of review on appeal from the grant or denial of summary judgment is de novo, and our scope of review is plenary[, and o]ur review is limited to determining whether [common pleas] committed an error of law or abuse of discretion." *Hinerman v. Westmoreland Cnty. Airport Auth.*, 297 A.3d 59, 63 n.1 (Pa. Cmwlth. 2023) (italics removed) (citation omitted).

[9] On December 18, 2024, this Court directed the parties to discuss the appealability of common pleas' Order in their principal briefs on the merits. *Jane Doe #4 & Jane Doe #5 v. Palisades Sch. Dist. and Christian Willman* (Pa. Cmwlth., No. 1377 C.D. 2024, filed Dec. 18, 2024).

collateral order of a trial court or other government unit." Pa.R.A.P. 313(a). The collateral order doctrine, as codified in Rule 313, is an exception to the final judgment rule that all appeals must await final judgment. *See Shearer v. Hafer*, 177 A.3d 850, 856-57 (Pa. 2018) (recognizing the collateral order doctrine as an exception to the general rule). In the oft-cited case *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359 (Pa. 2021), our Supreme Court recast the three-prong test set forth in Rule 313(b), explaining:

> [A]n order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.

*Id*. at 370 (citation omitted).[10] In turn, "[a]s an exception to the final order rule, the collateral order doctrine must be narrowly construed." *Doe v. Dumas*, 341 A.3d 265, 269 (Pa. Cmwlth. 2025) (citation omitted).

In *N.N. v. School District of Philadelphia*, 349 A.3d 1081 (Pa. Cmwlth. 2025), we recently examined *Brooks* in the context of a denial of summary judgment where a school district asserted governmental immunity under the Tort Claims Act in relation to sexual abuse claims brought by a student enrolled in the school district.[11] We explained that:

---

[10] Rule 313(b) provides that "[a] collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

[11] On January 26, 2026, the Court directed the parties to be prepared to discuss at oral argument our recent panel decision in *N.N.*, and our recent en banc decision in *L.F.V. v. South Philadelphia High School*, 340 A.3d 395 (Pa. Cmwlth. 2025) (en banc), *appeal granted*, (Pa., No. 243 EAL 2025, filed December 2, 2025).

Considering the first prong, whether the order was separable, the [Supreme] Court concluded the sovereign immunity issue was a purely legal question that did not require any analysis of the underlying negligence claim. [*Brooks*, 259 A.3d] at 371-72. Under the second prong, regarding the importance of the sovereign immunity issue, the [Supreme] Court "examined the importance of the right involved by weighing the interests that immediate appellate review would protect against the final judgment rule's interests in efficiency through avoiding piecemeal litigation." *Id*. at 372 (citation omitted) . . . . Finally, regarding the third prong, whether the family court's sovereign immunity defense would be irreparably lost if the case continued to final judgment, the [Supreme] Court concluded "sovereign immunity protects government entities from a lawsuit itself . . . [; therefore,] a sovereign immunity defense is irreparably lost if appellate review of an adverse decision on sovereign immunity is postponed until after final judgment." *Id*. at 373.

*N.N.*, 349 A.3d at 1086. Thus, "[b]ecause all three prongs under Rule 313 [were] satisfied, we conclude[d that] this matter involve[d] a collateral order appealable as of right." *Id.* at 1087.

Applying the collateral order doctrine here, as we did in *N.N.*, under the first prong, the issues on appeal are separable and distinct from Jane Doe #4's negligence claims against the District. This is to say that whether the District is immune from liability under the Tort Claims Act is a "wholly independent question from whether the District was negligent," and we need not address the underlying negligence claims when analyzing the District's immunity. *N.N.*, 349 A.3d at 1086-87. Therefore, the issues here are separable and distinct, and the first prong is satisfied.

Moving to the second prong, as *Brooks* and *N.N.* dictate, appellate review of a denial of immunity is far too important to evade review before a final judgment is entered. "The overall purpose of the Tort Claims Act, of course, is to limit governmental exposure to tort liability for its acts," *Sphere Drake Insurance Company v. Philadelphia Gas Works*, 782 A.2d 510, 515 (Pa. 2001) (citations

omitted), and, as illustrated by the participation of the amici school district in this case, "the implications of the [d]istrict's ability to invoke governmental immunity are wide-ranging, extending beyond this particular case," *N.N.*, 349 A.3d at 1087. Similar to *N.N.*, which also involved a school district and sexual abuse claims made by a student, the determination of whether the District is immune in the instant case implicates the rights of other sexual abuse victims across the Commonwealth to seek redress by invoking the sexual abuse exception under the Tort Claims Act. Thus, the second prong is satisfied because the resolution of whether the District is immune from liability is too important to evade review until common pleas has entered the final judgment.

As to the third prong, we have held that immunity, like sovereign immunity, is "more than just a shield against damages but, instead, [is a] protection[] against suit in the first place." *Hommrich v. Boscola*, 329 A.3d 775, 784 (Pa. Cmwlth. 2025) (en banc) (citing *Brooks*, 259 A.3d at 373). Requiring a party "to engage in litigation from which [they are] immune and allowing such litigation to proceed clearly undermines the purpose of immunity." *Id*. This is precisely the case here, as requiring the District to litigate this matter to final judgment would thwart the statutory immunity provided to local government agencies under the Tort Claims Act. Thus, in accordance with our decision in *N.N.*, the third prong is satisfied because the District's immunity would be irreparably lost if the District was forced to litigate this case to final judgment. Accordingly, because all three prongs of the collateral order doctrine are satisfied, we conclude that this Court has jurisdiction. Therefore, we next examine whether common pleas erred or abused its discretion in denying partial summary judgment.

## B. Partial Summary Judgment

The District argues that it is entitled to summary relief because there was no genuine dispute of material fact in the record before common pleas showing that Willman's hugging of or brushing up against Jane Doe #4 was done to a sexual or intimate part of her body or done for the purpose of Willman's sexual arousal or gratification. (District's Br. at 9, 18.) Specifically, the District asserts that the hugging or brushing of one's shoulder does not constitute contact with a sexual or other intimate part of the body under Section 3101 of the Crimes Code because, according to the District, shoulder contact is an ordinary form of social interaction and does not involve a part of the body reserved for close relationships. (*Id*. at 17-18, 21.) In addition, the District further asserts that instances of physical contact must be supported by evidence of sexual arousal or gratification at the time of contact, and it is not sufficient to show that a perpetrator derived arousal or gratification at some other time or from some other contact than the contact at issue. (*Id*. at 22-23.) Thus, the District concludes that common pleas erred because it inferred Willman's intent and analyzed sexual arousal and gratification based on physical contact Willman had with other victims, not Jane Doe #4. (*Id*. at 24.)[12]

Jane Doe #4 responds that a genuine issue of material fact exists as to whether Willman's conduct was "indecent contact" and further argues that it was proper for

---

[12] The District further argues that it is entitled to partial summary judgment on Jane Doe #4's claims because she did not establish that the District's negligence was the proximate cause of Willman's actions or that Willman's conduct was foreseeable and because Willman's conduct was intentional. Jane Doe #4 acknowledges and responds to these arguments, but also argues that the District did not assert such arguments in its Motion as a basis for partial summary judgment and they are, therefore, not preserved for this Court's review. (Jane Doe #4's Br. at 24-26.) A review of the District's Motion confirms Jane Doe #4's assertions, and, therefore, these alternate arguments are not currently before the Court. *See* Pennsylvania Rule of Appellate Procedure 302(a), Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

common pleas to deny partial summary judgment and to allow this case to proceed to trial. (Jane Doe #4's Br. at 16-17.) Specifically, Jane Doe #4 asserts that the District's arguments are based on limited and inaccurate readings of case law, including *Gamby*, and such readings do not support the District's position that Willman's hugging and brushing up against Jane Doe #4 falls outside the scope of indecent contact. (*Id*. at 21-23.) Rather, according to Jane Doe #4, Willman's hugging and brushing up against her, when viewed in the context of Willman's other behavior toward Jane Doe #4, such as grooming, sexually explicit conversations in person and over text, and requests to engage in sexual activities, which Willman either admitted or did not deny during his deposition, when taken together, shows that Willman's conduct constituted indecent contact. (*Id*. at 23-24.)

"On appeal from a trial court's order granting or denying summary judgment, our standard of review is de novo[,] and our scope of review is plenary." *Carpenter v. William Penn Sch. Dist.*, 295 A.3d 22, 29 n.5 (Pa. Cmwlth. 2023). "Summary judgment is properly entered only when, after examining the record in the light most favorable to the non-moving party[] and resolving all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law." *Schmidt v. Dep't of Transp.*, 326 A.3d 147, 150 n.8 (Pa. Cmwlth. 2024) (citation and internal quotation marks omitted).

The Tort Claims Act is the statutory scheme immunizing local agencies, such as school districts, from liability in the form of governmental immunity, stating that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Relevant here, the sexual abuse exception found in Section 8542(b)(9) provides that

10

liability may be imposed on a local agency or its employees for "[c]onduct which constitutes an offense enumerated under [S]ection 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence." 42 Pa.C.S. § 8542(b)(9).[13] In turn, Section 5551(7) states, relevantly:

> (7) An offense under any of the following provisions of 18 Pa.C.S. (relating to crimes and offenses), or a conspiracy or solicitation to commit an offense under any of the following provisions of 18 Pa.C.S. if the offense results from the conspiracy or solicitation, if the victim was under 18 years of age at the time of the offense:
>
> . . . .
>
> Section 3124.2 (relating to institutional sexual assault).

---

[13] Section 8542(a)(1)-(2) provides the circumstances under which the general rule of governmental immunity is abrogated, stating:

> **(a) Liability imposed.**--A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> > (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
> >
> > (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S. § 8542(a)(1)-(2).

11

42 Pa.C.S. § 5551(7). Section 3124.2(a.2)(1) of the Crimes Code, in relevant part, states:

> [A] person who is a volunteer or an employee of a school or any other person who has direct contact with a student at a school commits a felony of the third degree when he engages in sexual intercourse, deviate sexual intercourse or **indecent contact with a student of the school**.

18 Pa.C.S. § 3124.2(a.2)(1) (emphasis added).

In its Rule 1925(a) Opinion, common pleas considered and analyzed Section 3101 of the Crimes Code, 18 Pa.C.S. § 3101. Common pleas determined that whether the contact between Willman and Jane Doe #4 constituted indecent contact was an open question for the jury and could not be properly disposed of at the summary judgment phase. It explained:

> The question before the Court is whether or not the touching and rubbing of [] Jane Doe #4 by . . . Willman was, as a matter of law, not "indecent contact" as referred to in [Section 3124.2(a.1) of the Crimes Code] []. Despite [the District's] hyperbole, the question before the Court is not whether every time a teacher hugs a student is it indecent contact. Clearly, all hugs are not indecent. The Court finds, however, that some hugs could be. The term "indecent contact" is defined by [Section] 3101 which is set forth as follows:
>
> > "Indecent contact." Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person.
>
> [18 Pa.C.S. § 3101.] Therefore, when this case goes to Trial, the jury will be asked to determine if . . . Willman, touched an "intimate part" of [Jane Doe #4], for the purpose of arousing or gratifying sexual desire. It is not disputed that [Willman] has been convicted of sexually assaulting other young woman [sic]. It is not disputed that . . . [Willman] was excited and aroused by [Jane Doe #4], and convinced her to send him nude pictures, before and after he rubbed up against her and hugged her.

12

The [] District now argues that as a matter of law, a convicted sex offender, who "merely hugs and rubs up against a young victim, has not engaged in 'indecent contact'." The statute is broad in scope. The Statute refers to "touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." The term "intimate part" is not further defined.

The undersigned believes that without a further limiting definition[,] the decision as to what is an "intimate part" for purpose of the whole definition is left up to the jury. A jury will have to determine whether or not there was touching of an intimate part of [] Jane Doe #4. They will hear when and how the hugging occurred and hear what the rubbing up against her felt like.

The undersigned believes hugging another person and/or rubbing up against them could be considered "touching intimate parts" of another person's body under some circumstances, but perhaps not under other circumstances. What is "intimate" clearly depends on the circumstances. Two people wrestling competitively put their hands on each other's body and arguably grab, hug and rub their bodies up and against one another. That would probably not be considered intimate, but it would certainly be touching. The undersigned would also argue that the purposeful gentle touching by a fingertip to another person's forearm could, and in some certain circumstances, is intimate. A person could "intimately" reach out with the tip of their fingers and gently touch another person's nose, shoulder or neck to get their attention, and one or both of those persons might believe the conduct was touching an intimate part of the body.

* * * *

The question before the Court, as agreed to by the parties, came down to a finite point. Could the physical contact between [Willman] and [Jane Doe #4] be considered "indecent contact" by a jury. The Court concluded that it could be considered indecent contact. Another way to ask the question is should the Court rule that as a matter of law a convicted sex offender, who hugs a young victim, and who rubs up against the young victim has not engaged in "indecent contact".

The undersigned finds that the intent of the legislature was not to immunize such conduct.

(Rule 1925(a) Op. at 9-10, 12.)

13

In *Gamby*, 283 A.3d at 304, our Supreme Court examined whether, with an arm around the neck and shoulder area, a kiss on the neck constitutes "the touching of the 'sexual or other intimate parts' of the victim sufficient to sustain [a] conviction for indecent assault under 18 Pa.C.S § 3126(a)(1)." The Crimes Code defines guilt for "indecent assault" as, *inter alia*, "indecent contact with the complainant. . . ." 18 Pa.C.S § 3126(a). It was in this context that the Supreme Court interpreted the term "indecent contact" as defined in Section 3101 as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." *Gamby*, 283 A.3d at 302 (italics removed) (citing 18 Pa.C.S. § 3101). The Court separated this definition into two distinct concepts: the touching, and the purpose. *Id.* at 311-12. At issue in *Gamby* was the touching, specifically, whether it was of the "sexual or other intimate parts" of the victim. *Id.* at 304.

The Supreme Court consulted dictionary definitions to determine the legislative meaning of "sexual or other intimate parts," reasoning:

> "[I]ntimate parts" are clearly more than "sexual parts," and so cannot solely relate to the genitalia, as such a construction would ignore the manifest distinction between "sexual" and "other intimate parts," and would make the latter term superfluous. By including the words "or other," the legislature made clear that "sexual" is a subset of the category of "intimate parts" – that is, "intimate" is broader than "sexual." Therefore, we reject [the appellant's] suggestion that "intimate parts" can be cabined solely to the sexual body parts, as the statute, by its very terms, is more broadly applicable. Conversely, we also reject the Commonwealth's suggestion that the phrase "sexual or other intimate parts" constitutes any body part, as the qualifiers "sexual" and "intimate" plainly narrow the focus. In that regard, the statute's reference to sexual and other intimate parts refers to areas of the person that implicate sexual autonomy, rather than offensive touch generally, which would be the subject of a mere battery.

*Id.* at 308 (emphasis omitted). The Supreme Court thus held:

14

> [A]s used in [Section] 3101, the phrase [sexual or other intimate parts] is not limited to only sexual body parts, but rather, was also intended to mean a body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship, and one which is commonly associated with sexual relations or intimacy.

*Id*. at 313-14.

The District argues that hugging or brushing a shoulder does not constitute touching a "sexual or other intimate part." However, in specifying that it was not limiting what can be considered an "intimate part" to only sexual body parts, the Supreme Court specifically did **not rule out shoulders** from the definition of intimate parts. The Court stated:

> "While an issue of first impression for our Court, the Superior Court has previously addressed the meaning of "intimate parts." While at this juncture we have no occasion to speak to whether the body parts at issue in these decisions are properly considered "intimate parts" under our analysis today, the decisions interpreted the phrase "other intimate parts" to encompass more than sexual organs. For example, in [*Commonwealth v. Capo*, 727 A.2d 1126 (Pa. Super. 1999)], . . . the Superior Court interpreted "other intimate parts" to include **the shoulders,** neck, and back. Similarly, then-Judge, now Justice Wecht in [*Commonwealth v. Fisher*, 47 A.3d 155 (Pa. Super. 2012)], . . . opined that "[t]he backs of the legs can be intimate parts of the body, just as **the shoulders**, neck, and back were in *Capo*, . . . ." *Fisher*, 47 A.3d at 158; *see also* [*Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)] . . . (holding evidence was sufficient to convict defendant of indecent assault where defendant wrapped his arms around victim and inserted his tongue into victim's mouth because such act would not occur outside of sexual or intimate situation).

*Gamby*, 283 A.3d at 313 n.16 (emphasis added).

The touching in *Gamby* involved two adults and a nonconsensual, forceful kiss on the back of the adult victim's neck while the perpetrator's arm was around the victim's neck and shoulder area, and where the perpetrator had grabbed the victim. *Id*. at 304. In applying its definition to the touching in *Gamby*, the Supreme

15

Court stated "that, in ordinary social interaction, the neck is a personal and private body part . . . [,] an adult does not usually touch or kiss the neck of another adult outside of personal or intimate relationships . . . [,] [and] a person's neck is routinely associated with sexual relations or intimacy," concluding "that the neck is an intimate body part for purposes of Section 3126." *Id*. at 314. The Superior Court subsequently examined a trial court's application of the *Gamby* definition in *Heidel v. Fowler*, 325 A.3d 816, 822 (Pa. Super. 2024), affirming the grant of a sexual violence protective order where an adult coworker grabbed and rubbed another adult coworker's inner arm holding "that an adult does not usually embrace or rub the inner, upper arm of another outside of personal or intimate relationships."[14]

Unlike in *Gamby* and *Heidel*, where the courts applied *Gamby* to determine whether the body part was "intimate" when **an adult was touching another adult**, here, we examine the touchings of the body parts of **a minor child** by **an adult** who is a convicted sexual offender. In both *Gamby* and *Heidel*, the courts specified that in discerning whether the body part was one "which **the person** ordinarily allows to be touched only by people with whom **the person** has a close personal relationship," *Gamby*, 283 A.3d at 313 (emphasis added), they were looking at **adults** as "an **adult** does not usually touch or kiss the neck of another **adult**," *id.*, at 314 (emphasis added), and "an **adult** does not usually embrace or rub the inner, upper arm of another [adult]," *Heidel*, 325 A.3d at 822 (emphasis added).[15] That "the person" the Supreme Court described in *Gamby* was **an adult** is also evident from the Court's

---

[14] In general, "Superior Court decisions 'are not binding on this Court, but they offer persuasive precedent where they address analogous issues.'" *Pa. State Police v. Madden*, 284 A.3d 272, 278 n.13 (Pa. Cmwlth. 2022) (citation omitted).

[15] *Accord Commonwealth v. Haahs*, 289 A.3d 100, 107 (Pa. Super. 2022) (holding that "the lips and inner mouth of a complainant constitute an 'intimate part' of the body for purposes of the definition of 'indecent contact' under [Section] 3101").

16

focus on "areas of the person that implicate **sexual autonomy,**" in defining what constitutes "an intimate part." *Gamby*, 283 A.3d at 308. The concept of "sexual autonomy" is complicated to apply to minor children. For example, minors cannot consent to sexual contact. *See, e.g.*, 18 Pa.C.S. § 3124.2(a.5) (consent is not a defense to the crime of institutional sexual assault); *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 347 (Pa. 2008) (holding that consent of a minor victim to sexual contact is not a defense to determining civil liability for such contact where it is not a defense for the corresponding criminal offense).

In this case, we examine whether Willman's, an adult, touchings in the form of hugging the minor and brushing up against the minor, meets the "touching" definition. Under these circumstances, we believe that a jury could find that this hugging and brushing up against Jane Doe #4 constitutes that "which **the person** [(a young minor child)] ordinarily allows to be touched only by people with whom **the person** [(a young minor child)] has a close personal relationship." *Gamby*, 283 A.3d at 313.

The Court cautioned against conflating the two concepts – the touching and the purpose. Thus, we note that should the jury make such a finding, there would still need to be a case made that Willman's touchings, hugging and brushing up against Jane Doe #4, meet the "purpose" definition. The Supreme Court has stressed that there are two "distinct elements of conduct constituting 'indecent contact' / 'sexual contact': (1) the touching of a sexual or other intimate part and (2) the touching for **the purpose** of arousing or gratifying sexual desire." *Id.* at 310 (emphasis added). As the Supreme Court cautioned:

> Whether a jury finds the touching of the neck to be for sexual gratification, the second element necessary to find indecent contact, however, is a separate fact-specific determination. To be clear, not

every contact with the neck will constitute indecent contact, as the element of sexual gratification must still be proven to constitute indecent contact, and, ultimately, indecent assault.

*Id*. at 315-16.

In sum, after a thorough review of the issues on appeal, the record and applicable law, and common pleas' 1925(a) Opinion, we agree with common pleas' conclusion that the touchings here, Willman's hugging and brushing up against Jane Doe #4 in the school setting and at soccer practices and scrimmages, could be found by a jury to be indecent contact. While the District argues the context and circumstances of each case are immaterial, we are persuaded that common pleas' conclusion is not inconsistent with the statutory language (and, therefore, the Legislature's intent) and our Supreme Court's holding in *Gamby*. Therefore, we conclude that common pleas did not err or abuse its discretion by denying partial summary judgment.

## III.    CONCLUSION

For these reasons, this Court has jurisdiction to hear this appeal because the Order satisfies the requirements of the collateral order doctrine. We further conclude that common pleas did not err or abuse its discretion in denying the District's request for partial summary relief on the basis that there were genuine issues of material fact as to whether Willman's contact with Jane Doe #4 could constitute indecent contact in this case. Accordingly, we affirm.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jane Doe #4 and Jane Doe #5 | : | |
| | : | |
| v. | : | No. 1377 C.D. 2024 |
| | : | |
| Palisades School District and | : | |
| Christian Willman | : | |
| | : | |
| Appeal of: Palisades School District | : | |

# **O R D E R**

**NOW**, July 10, 2026, the Order of the Court of Common Pleas of Bucks County, dated September 25, 2024, is **AFFIRMED**.

Jurisdiction relinquished.

_____
RENÉE COHN JUBELIRER, President Judge